UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KATHLEEN CHORBAGIAN, et al.,

               Plaintiffs,                                   Case No. 1:23-cv-11087

v.                                                  Honorable Thomas L. Ludington
                                                  United States District Judge

UNITED STATES OF AMERICA,

               Defendant.

_____/

**OPINION AND ORDER GRANTING THE GOVERNMENT'S MOTION TO DISMISS AND DISMISSING PLAINTIFFS' COMPLAINT**

On May 19, 2020, the Edenville Dam, which had stood for nearly a century on the Tittabawassee River, failed. The Dam's 2,600-acre reservoir was unleashed, causing historic flooding. Plaintiffs—twenty owners of real property on "the now-non-existent Wixom Lake"—all suffered property damage due to the Dam's failure and seek over $11 million in damages from the federal government. But the Sixth Circuit Court of Appeals recently addressed Plaintiffs' arguments in an indistinguishable case and held that the Government is immune from liability for claims like Plaintiffs' under the Federal Power Act, 16 U.S.C. § 803(c). Indeed, the Government seeks dismissal of Plaintiffs' claims for that very reason. Accordingly, as explained below, the Government's Motion will be granted, and Plaintiffs' Complaint will be dismissed.

**I.**

**A.**

Although at the motion-to-dismiss stage the *analysis* is limited to the facts as pleaded in the plaintiff's complaint, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[A] complaint must contain sufficient factual matter, *accepted as true*, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added)), for

helpful background context, this Court has previously summarized the history of the Edenville

Dam's licensure and operation as follows:

> For nearly a century, four dams have sat along a 39-mile stretch of the Tittabawassee River. Starting with the most upstream, they are the Secord, Smallwood, Edenville, and Sanford Dams (the "Dams").

> Originally constructed in 1924, the Edenville Dam consists of two earthen embankments spanning the Tittabawassee River and the Tobacco River. The water held by the Edenville Dam forms a 2,600-acre reservoir known as Wixom Lake. Like Sanford Lake, further downstream, Wixom Lake had become a popular recreation site before the Edenville Dam failed, with hundreds of homes and docks lining its shores.

> [The Federal Energy Regulatory Commission ("FERC")] is an independent agency tasked with regulating the sale and transmission of electricity under the Federal Power Act (FPA), 16 U.S.C. § 791a *et seq.* In 1998, FERC issued licenses to Wolverine Power Company ("Wolverine") for the generation of hydroelectric power at the Smallwood, Edenville, and Sanford Dams. *See Wolverine Power Corp.*, 85 FERC ¶ 61,063 (1998). Several years later, Wolverine became insolvent, and the Dams and their licenses were purchased by Synex Michigan, LLC, which later became Boyce Hydro Power, LLC ("Boyce"). Ordinarily, FERC would have investigated Boyce's financial capacity to operate the Dam safely before Boyce could purchase it. *See* 16 U.S.C.§ 801 ("No voluntary transfer of any license, or of the rights thereunder granted, shall be made without the written approval of the commission . . . ."); *id.* at § 808(a)(2) (requiring FERC to make certain findings before issuing licenses). But for reasons that remain unclear, FERC never conducted a pretransfer investigation. Instead, in June 2004, FERC issued a short order approving the transfer, which Wolverine and Boyce had finalized nearly a year beforehand. *See Wolverine Power Corp. Synex Energy Res., Ltd. Synex Mich., LLC*, 107 FERC ¶ 62,266, at 64,498 (2004).

> With the license secured, Boyce proceeded to generate electricity at the Edenville Dam for the better part of two decades. It was only a matter of months, however, before Boyce was the target of federal regulators.

> Shortly after FERC approved the transfer, Boyce sent a letter to FERC conveying plans to build auxiliary spillways at the Dam. *Boyce Hydro Power, LLC*, 164 FERC ¶ 61,178 at P 5 (2018). The need for additional spillway capacity was old news to FERC. In 1999, FERC sent a letter to Wolverine describing the need for more spillway capacity as its "primary concern." *Id.* at P 4. The fear was that, without additional spillway capacity, the Edenville Dam could not withstand the "Probable Maximum Flood" (PMF), defined as "the flood that may be expected from the most severe combination of critical meteorologic and hydrologic conditions that is reasonably possible in the drainage basin under study." *Id.* at P 3.

The "[f]ailure of the Edenville Dam," FERC later warned, "could result in the loss of human life and the destruction of property and infrastructure." *Boyce Hydro Power, LLC*, 162 FERC ¶ 61,115 at P 3 (2018).

Despite assurances, Boyce's plan to increase the Dam's spillway capacity never materialized. On June 15, 2017, after over a decade of project delays, missed deadlines, and "patently deficient" construction proposals, FERC issued a compliance order directing Boyce to submit specific plans for the construction of auxiliary spillways. 164 FERC ¶ 61,178 at P 9; *Boyce Hydro Power, LLC*, 159 FERC ¶ 62,292 at P 2 (2017). When Boyce did not comply, FERC ordered it to stop generating power. *Boyce Hydro Power, LLC*, 161 FERC ¶ 62,119 at P 2 (2017).

Boyce appealed FERC's order to the Court of Appeals for the District of Columbia Circuit, which stayed the order and allowed Boyce to keep generating power. *See In re Boyce Hydro Power*, LLC, No. 17-1270 (D.C. Cir. Feb. 7, 2018). One week later, FERC formally proposed revoking Boyce's license, explaining that Boyce had "failed to meet nearly all the obligations in the Compliance Order, even after Commission staff granted multiple extensions." 162 FERC ¶ 61,115 at P 10.

Boyce did not request an evidentiary hearing or "dispute that it . . . failed to comply with the Commission's directives." 164 FERC ¶ 61,178 at P 40. Instead, it argued that revocation of its licenses was not in the public interest because, inter alia, "revoking the license would not address the Commission's primary concern regarding the inadequate spillway capacity." *Id.* FERC disagreed, noting that once it revoked Boyce's license, regulatory jurisdiction over the Edenville Dam would transfer to the Michigan Department of Environmental Quality, which had its own spillway-capacity standards. *See id.* at P 55.

On September 10, 2018, FERC revoked Boyce's license for the Edenville Dam. *Id.* at P 1. As anticipated, the Michigan Department of Environmental Quality, now called the Michigan Department of Environment, Great Lakes, and Energy ("EGLE"), assumed jurisdiction over the Dam, but Boyce continued to operate it.

In 2019, Boyce began negotiating the sale of the Edenville Dam to the Four Lakes Task Force (FLTF), a statutory entity formed under Part 307 of the Michigan Natural Resources and Environmental Protection Act, MICH. COMP. LAWS 324.30701 *et seq.* The FLTF obtained a permit to assess the feasibility of generating power at the Edenville Dam later that year but never sought a license. *See Four Lakes Task Force*, 169 FERC ¶ 62,124 (2019).

*Allen v. United States*, 572 F. Supp. 3d 411, 414–16 (E.D. Mich. 2021), *aff'd*, 83 F.4th 564 (6th

Cir. 2023) (internal footnotes omitted); *see also* ECF No. 1 at PageID.8–15 (outlining the same

factual history).

**B.**

On May 19, 2020, after a period of heavy rain, "the Edenville Dam failed, resulting in

catastrophic flooding to downstream areas." ECF No. 1 at PageID.15. Plaintiffs report

"approximately 2,500 homes and buildings were damaged," and that the State of Michigan

estimated the economic harm from the Dam's failure exceeded $200 million. *Id.* at PageID.17.

Plaintiffs allege that the Dam's failure—and subsequent damage—was "entirely preventable"

because FERC "indisputably knew for years that these Dams were inadequate, decrepit, unstable,

unsafe, and would fail under predictable conditions, that Boyce should never have been licensed

in the first place, and that Boyce was recalcitrant in its repeated refusal to take action to protect

the public." *Id.* at PageID.17.

Accordingly, in May 2022, Plaintiffs—20 owners of real property on the "now-non-

existent Wixom Lake," *id.* at PageID.5, filed this lawsuit against the federal government, seeking

a total of "$11,724,001.64 in restitution and damages for the repair of the homes and replacement

of loss items, personal injury expenses, and loss of property value, and for emotional distress

caused by FERC's negligence," *id*. at PageID.27. Plaintiffs allege the Government negligently

entrusted the management of the Dam to Boyce (Count I) and abandoned its "[m]andatory [d]uty"

to monitor the integrity of dams under its jurisdiction (Count II). *Id.* at PageID.18–24.

But—importantly—these 20 Plaintiffs are not the first Wixom Lake residents to assert

these claims. Indeed, in February 2021, Daniel and Cathleen Allen pursued the same claims against

the federal government. *See Allen v. United States*, 572 F. Supp. 3d 411, 417 (E.D. Mich. 2021),

*aff'd*, 83 F.4th 564 (6th Cir. 2023) (alleging "FERC negligently entrusted Boyce with the Edenville Dam and then failed to monitor its safety"). And the Allens' Complaint was dismissed by this Court in November 2021 for lack of subject-matter jurisdiction because the Federal Power Act "exempt[ed] the Government from liability for Plaintiffs' damages." *Id.* at 428. But the Allens appealed this Court's dismissal, and while their appeal was pending, these 20 Plaintiffs filed this case in May 2023. ECF No. 1.

In October 2023, the Sixth Circuit Court of Appeals affirmed this Court's dismissal of the Allens' claims, holding that the FPA did, indeed, exempt the Government from liability for damages caused the Edenville Dam failure. *Allen v. United States*, 83 F.4th 564 (6th Cir. 2023).

Thirteen days later, the Government filed a motion to dismiss these 20 Plaintiffs' Complaint, explaining their claims were barred by the FPA, just like in *Allen*. ECF No. 8 at PageID.57–58. Plaintiffs respond that their allegations are "distinguishable" from the claims in *Allen* because they allege that FERC's conduct "went beyond its role as a regulator under the Federal Power Act," by "embolden[ing] and encourage[ing] Boyce's noncompliance." ECF No. 10 at PageID.75–76.

**II.**

Under Civil Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a Rule 12(b)(6) dismissal, the court must accept all factual allegations of the complaint as true and will construe the pleading in favor of the nonmovant. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of

a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," but the court need not accept as true the complaint's legal conclusions. *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

**III.**

**A.**

This case—like *Allen*—begins and ends with sovereign immunity. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v.* Meyer, 510 U.S. 471, 475 (1994). But the Federal Tort Claims Act ("FTCA") waives the federal government's sovereign immunity in certain tort cases. A FTCA claim must be (1) against the United States (2) for money damages (3) for injury or loss of property, personal injury, or death (4) caused by the negligent or wrongful act or omission of any employee of the federal government (5) while acting within the scope of his office or employment (6) under circumstances where the federal government, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. *See* 28 U.S.C. § 1346(b)(1).

But some statutes—like the Federal Power Act ("FPA")—expressly provide for sovereign immunity "in suits where the FTCA might otherwise waive [it]." *Allen v. United States*, 83 F.4th 564, 567 (6th Cir. 2023). Congress enacted the FPA "in 1920 to regulate the development of hydroelectric power," and the Act "enables the [federal] government to issue licenses to operate hydroelectric dams." *Id.* (citing 16 U.S.C. §§ 791a–823g).[1] And, of particular relevance here, the FPA expressly specifies that each licensee authorized to operate a dam "shall be liable for all

---

[1] Notably, the FPA also authorizes the Government to "take over" any project upon the expiration of the license, *see* 16 U.S.C. § 807(a), though apparently it has never done so, *see* J. McGREW, FEDERAL ENERGY REGULATORY COMMISSION 223 (2009).

damages occasioned to the property of others by the construction, maintenance, or operation of the project works or of the works appurtenant or accessory thereto, constructed under the license and in *no event* shall the United States be liable therefor." 16 U.S.C. § 803(c) (emphasis added).

In *Allen*, the Parties disputed whether Section 803(c) of the FPA applied to the plaintiffs' negligent-entrustment claims against the federal government for damage caused by the Edenville Dam's failure in May 2020. *See Allen v. United States*, 572 F. Supp. 3d 411, 419 (E.D. Mich. 2021), *aff'd*, 83 F.4th 564 (6th Cir. 2023). This Court *and* the Sixth Circuit concluded that Section 803(c) *did* apply to the plaintiffs' negligent-entrustment claims such that only the licensee—Boyce—and *not* the federal government "shall be liable" for damages caused by the Dam's failure. 16 U.S.C. § 803(c); *see also Allen v. United States*, 572 F. Supp. 3d 411, 428 (E.D. Mich. 2021); *Allen v. United States*, 83 F.4th 564, 574 (6th Cir. 2023). Accordingly, the Allens' complaint was dismissed for lack of subject-matter jurisdiction on the basis of sovereign immunity. *Allen v. United States*, 572 F. Supp. 3d 411, 428 (E.D. Mich. 2021), *aff'd*, 83 F.4th 564 (6th Cir. 2023).

**B.**

Importantly, Plaintiffs here bring the same two claims the *Allen* plaintiffs brought: (1) that FERC negligently entrusted the Edenville Dam to Boyce; and (2) that FERC was negligent by failing to monitor the integrity of the Dams. *Compare* ECF No. 1 at PageID.1824 *with Allen v. United States*, 1:21-cv-10449 (Feb. 26, 2021, E.D. Mich.), ECF No. 1 at PageID.15–21. Accordingly, for the same reasons discussed by this Court and the Sixth Circuit in *Allen*, Plaintiffs' Complaint must be dismissed.

Plaintiffs assert their claims are distinguishable from the Allens' claims because Plaintiffs here use language to suggest the Government "enable[ed]" and "emboldened" Boyce's negligence by entrusting the Dam to Boyce. ECF No. 10 at PageID.74–76; *see also* ECF No. 1 at PageID.22

(alleging FERC "embolden[ed] Boyce's tortious conduct via its unfettered entrustment" of the Dams to Boyce.). But, as the Government points out, whatever language these 20 Plaintiffs choose to include in their Complaint to *characterize* FERC's entrustment of the Dam to Boyce, the analysis of a claim for negligent entrustment remains the same. ECF No. 11 at PageID.136. Indeed, there is no cause of action for negligent *emboldenment*. And even if there was, the claim Plaintiffs pursued here was negligent *entrustment*. *See* ECF No. 1. And, as both this Court and the Sixth Circuit have already held, the Government is immune from suit for any damages resulting from the Edenville Dam's failure because the FPA expressly immunizes the federal government from such claims. *See Allen v. United States*, 83 F.4th 564, 574 (6th Cir. 2023) ("Instead of holding the [federal] government liable for disasters like the Edenville Dam flood, Section 803(c) imposes liability on the licensees who build and manage hydropower projects.").

Accordingly, the Government's Motion to Dismiss, ECF No. 8, will be granted, and Plaintiffs' Complaint, ECF No. 1, will be dismissed with prejudice. As the Sixth Circuit recognized, this outcome is a "cold comfort when the licensee is bankrupt, and the claimants have experienced a devastating injury." *Allen v. United States*, 83 F.4th 564, 574 (6th Cir. 2023). But the FPA entitles the Government to immunity, so Plaintiffs' claims must be dismissed. *Id.*

**IV.**

Accordingly, it is **ORDERED** that the Government's Motion to Dismiss, ECF No. 8, is **GRANTED**.

Further, it is **ORDERED** that Plaintiffs' Complaint, ECF No. 1, is **DISMISSED**.

**This is a final order and closes the above-captioned case.**

Dated: May 21, 2024                                    s/Thomas L. Ludington
                                                      THOMAS L. LUDINGTON
                                                      United States District Judge

- 8 -